PLAINTIFF NONSUITED.

——❦——

# CIRCUIT COURT OF THE UNITED STATES FOR THE MARYLAND DISTRICT,

## MAY TERM 1803.

### THE BANK OF THE UNITED STATES *vs.* NORWOOD.

ASSUMPSIT on a promissory note drawn by *Stone, Vaughan, & Co.* in favour of the defendant, and by him endorsed to the plaintiffs. This note was what is called an *accommodation note,* and the defendant endorsed merely to enable the drawers to obtain money on it from the bank, and the defendant knew that the drawers meant to obtain the money from the plaintiffs.

The following facts appeared in evidence. The note was presented for payment to the drawers, who refused to pay it, and it was on the same day protested by *Samuel Sterett,* a notary public, and a letter to the defendant informing him that the note was protested for nonpayment was put into the post office on the same day. The defendant lived seven miles from the city of Baltimore, and the post office in the said city was the nearest post office to the house of the defendant.

Mr. *Sterett* proved that he was agent to the bank for the purpose of presenting notes for payment, and that it was his invariable custom, whenever a note was refused payment, to protest it, and give notice of the protest in person to the indorsors, if they lived in the city, and if they lived in the neighbourhood to put a letter in the post office informing them of the pro-

A corporation may do acts in *pais* otherwise than by deed.

Where notice to an indorsor of a promissory note, of which a bank is the holder, is given according to the usage of the bank, it is sufficient to charge the indorsor.

It is not necessary that the notice should contain, in so many words, an intention to hold the indorsor liable, it is sufficient if, under all the circumstances, it imports such intentions

May 1803.

Bank of the U. S.
vs
Norwood

test for nonpayment. The penny post does not deliver letters to any person residing out of the city. The drawers were known by the indorsor to be insolvent at the time of the indorsement.

*Key,* for the Defendant, objected—1. That the manner of sending the notice is not sufficient. In England, where the conveyance of letters by post is so much more regular and expeditious than it is in this country, the law requires the letter to be sent by the very first post—and even should that be considered sufficient in this country, yet in the case before the court, the notice was not sufficient, for the defendant lived seven miles from the city, and no letters are carried to the defendant's house by the penny post. The defendant only coming to town occasionally, the letter might remain in the office for a long time, and the very object for which speedy notice is required would be entirely defeated.

2. But admitting that this mode of giving notice should be considered sufficient, yet the form of notice is in itself deficient. The notice only states that the note is protested for nonpayment. The law requires that the notice should not only inform the indorsor of the nonpayment of the note, but also declare that the holder discharges the drawer, and looks to the indorsor for payment. For although the note may not be paid at the moment it becomes due, by the drawer, yet it does not follow that he will not pay it, or that the holder necessarily gives up his responsibility, and looks to the indorsor; and therefore the law requires that this should be expressly stated in the notice, that the indorsor may be certain that the holder looks alone to him for the payment, and that he may take the best means to secure himself. *Kyd.* 125. *Lovelace,* 161, 165. *Tindall vs. Brown,* 1 *T. R.* 167.

3. That *Samuel Sterett* having no authority by deed from the bank to demand the money, was therefore not legally authorised to receive it, and consequently no notice from an unauthorised person can be suffici-

cht. A corporate body can do no act in *pais* by agent without the authority be by deed. If Mr. *Sterett* was not authorised to receive the money, the makers were not bound to pay it, of course there was no legal demand, and then no notice could be given to bind the indorsor. 1 *Salk.* 191. 3 *Salk.* 103. 4 *T. R.* 170.

*Hollingsworth*, (District Attorney,) for the plaintiffs. 1. There is a precise similarity in the situation of this country and England. The posts are as frequent and as regular, and in this case the letter was put into the post office which was nearest to the defendant's residence. This too is according to the usage and custom of *Baltimore*. The commerce of *Baltimore* is extensive, and any particular custom of such a place is sufficient to warrant a judicial decision.

2. Even admitting the law as stated, the notice here is a notification to all parties to the note that they will be looked to for payment. This must be the substance of a protest, or it has no meaning.

3. It is admitted that all official functions of a corporation must be done under seal. But this is not an official function, and cannot therefore require the solemnity of a deed under seal.

*Martin*, (Attorney General of Maryland,) on the same side. 1. All that the law requires is, that the notice should be put in the regular train to arrive at the post office nearest to the party's residence. Suppose this transaction had taken place at *New-York* or *Philadelphia*, all that would be necessary would be to put the letter of notice into the post office there, and as *Baltimore* is the nearest office to the residence of the defendant, it would have stopped in *Baltimore*, and yet this would have been unquestionably sufficient. In the present case, the letter was put into that post office and would certainly reach the defendant as soon as if it had come from either of the other places to the *Baltimore* post office. But independent of the general custom, this notice was sent in the mode which

has always been used by the bank in similar cases; and when the defendant endorsed the note, it is presumable that he knew the custom, and assented to be bound by it; or even if he was ignorant of the custom he would be bound by it, for it was his business to have known it.

2. It would appear that the defendant's counsel supposed the notice must be in the very words of the books. But surely any notice, which amounts to the same meaning, would be sufficient; and if a protest means any thing, it is that the drawer has refused payment, and that the holder looks to the indorsor—no precise form of words is necessary—and the uniform practice of the bank to give notice of the protest, does of itself import that the indorsor will be looked to for payment. But the only authority which the gentleman relies on, is the decision of two judges on a point which did not arise in the case under consideration.

3. The principle contended for cannot be true in the extent to which it is urged—A Bank may authorise a person to sign bank notes for it without deed, and surely if it can do this it may authorise a person to demand money. 3 P. Wms. 419.

THE COURT took until the next day to consider the objections, when the opinion was delivered by

CHASE, J. (a) From indisposition I have not been able to give this case so full a consideration as I wished. We have, however, considered it so far as to have formed a decided opinion.

It has been objected that the plaintiffs, being a corporate body, cannot act by agent without authority by deed. This objection has no force. The bank may act as a natural person.

As to the manner of giving notice, it might be questionable whether the simply putting the letter in the post office would be sufficient if there were no other circumstances in the case. But there are other facts which have determined the opinion of the court,

(a) Winchester, D. J. concurred.

that there has been sufficient and legal notice. The custom of the place decides the question. This custom too was known to the defendant. When an engagement is made, it is subject to the usage and custom of the place where it is made respecting such engagement.

The notice is in itself sufficient—it amounts, under the circumstances of this case, to the fullest notice contended for by the defendant's counsel—not only that the note is not paid, but that he will be looked to for payment—any thing which shews that the holder does not mean to give credit to the drawer is sufficient notice to the indorsor. In this case it was known that the drawers were insolvent at the time of the endorsement, and the indorsor therefore undertook to pay at all events. The protest, although not required by law, and therefore of itself not sufficient notice, is however not totally idle. It is a paper from the agent of the bank, and from the usage of the place imports that the bank looks to all parties concerned for payment of the note, and the defendant had notice that this protest was made.

The court are of opinion, that the defendant has had legal and sufficient notice of the default of the drawers.