BANK OF COLUMBIA. (KURTZ v.) See Case No. 7,949.

---

## Case No. 872.

### BANK OF COLUMBIA v. LAWRENCE.

[2 Cranch, C. C. 510.][1]

Circuit Court. District of Columbia. Dec. Term, 1824.[2]

NEGOTIABLE INSTRUMENTS—INDORSER—NOTICE OF DISHONOR—PLACE OF BUSINESS—LOCAL USAGE.

1. If the endorser of a note dated at Georgetown, District of Columbia, and held by a bank in that town, resides in the country two or three miles from the bank, but has a house or place of business within half a mile of the bank, where it was generally known, and especially known to the runner of the bank, that he kept his account books and received his ordinary bank notices, newspapers and foreign letters, &c., a notice left for him at the post-office in Georgetown, and directed to him at Georgetown, although that was his nearest post-office, and the one from which he usually received his letters which came by the mail, is not a sufficient notice to charge him as indorser, unless conformable to a well-established usage of the bank known to the defendant at the time of his indorsement.

[See note at end of case.]

2. If, at the time of the indorsement of the note, which was made negotiable at the bank, it was the general usage of the banks and notaries in the District of Columbia to give notice to the indorsers on the day after the last day of grace, and such usage was known to the defendant, at the time of his indorsement, he is bound by such usage, and the notice so given is in due time.

[See Bank of Alexandria v. Wilson, Case No. 856.]

At law. Assumpsit [by the Bank of Columbia] against the indorser [Lawrence] of Joseph Milligan's promissory note for $5,000, at sixty days, negotiable in the bank of Columbia, payable on the 13th–16th of April, 1819, and dated at Georgetown.

By the bill of exceptions in this case, it appears that evidence was offered, that the defendant, who was a morocco leather-dresser, and owned a house in the city of Washington, where he had his shop, removed, in the year 1818, into the country, in the county of

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reversed in 1 Pet. (26 U. S.) 578.]

Alexandria, where he lived, at the time of indorsing the note, and when it became payable, and that the Georgetown post-office was the post-office nearest to his residence, being two or three miles distant, and the one at which he usually received his letters which came by the mail. That the notice of nonpayment was put into the Georgetown post-office, addressed to the defendant "Georgetown," and that such was the generally known usage of the banks when indorsers resided out of the town; and that such usage was known to the defendant. That the defendant continued to own the house in Washington, which was only a quarter of a mile from Georgetown, where the plaintiff's banking-house was situated, and permitted his sister, Mrs. Harbaugh, to occupy it without rent, and came regularly every week, two or three days in each week, to the said house, where he kept his book of accounts, and received his ordinary bank notices, his newspapers, and foreign letters, and where he was employed in winding up his former business and settling his accounts; and that his so coming to town, and so employing himself, at such times, at the said house, was generally known to persons having business with the defendant, and to the runner of the Bank of Columbia.

Whereupon the plaintiffs prayed the court to instruct the jury, that it was not incumbent on the plaintiffs to have left the notice of non-payment at the house occupied by Mrs. Harbaugh, but that it was sufficient to leave it at the post-office in Georgetown; which instruction, the court, being divided, (CRANCH, Chief Judge, absent,) did not give.

And thereupon, the defendant prayed, &c., that the notice so given was not sufficient to charge the defendant; which instruction the court, (being divided,) did not give.

The case was, afterwards, in the same term, brought before a full court, when the following authorities were cited or consulted: Bank of U. S. v. Norwood, 1 Har. & J. 423; Lenox v. Roberts, 2 Wheat. [15 U. S.] 377; Bussard v. Levering, 6 Wheat. [19 U. S.] 102; Lindenberger v. Bell, Id. 104; M'Gruder v. Bank of Washington, 9 Wheat. [22 U. S.] 600. The demand need not be personal; it is sufficient if made at his place of abode, or generally, "at the place where he ought to be found." Ireland v. Kip, 10 Johns. 490, 11 Johns. 231; Chit. Bills, 288; Freeman v. Boynton, 7 Mass. 483.

January 12, 1825, CRANCH, Chief Judge, delivered the opinion of the court, (THRUSTON, Circuit Judge, dissenting.)

The first question is, would the notice, left at the post-office in Georgetown, if it had been left in due time, and if the defendant had not had a place of business or counting-house in Washington, have been sufficient? Upon this point we are referred to the case of the Bank of U. S. v. Norwood, in 1 Har.

& J. 423, a case which I have not seen lately, but which I believe decided that notice, (to an indorser living in the vicinity of Baltimore, and to whom the post-office at Baltimore was the nearest post-office,) put into the post-office at Baltimore, was good, the indorser having no known place of business or counting-house in Baltimore, or elsewhere, near any other post-office; it having been proved to be the usage of merchants in Baltimore, to give notice in that manner, in like cases; and the knowledge of such usage having been brought home to the indorser, at the time of his indorsement. In general, if the holder and the indorser live in the same town, (and, by parity of reason, I should suppose, within the same post-office district,) notice left at the post-office is not sufficient. The general rule is, that the notice must be personal, or left at the defendant's usual place of abode, or place of transacting his mercantile business, or "the place where he ought to be found." M'Gruder v. Bank of Washington, 9 Wheat. [22 U. S.] 600. In order to justify the leaving of notice at any other place than the usual place of abode, it must be a place which the defendant has agreed to substitute for his place of abode, pro hac vice, or for receiving notices; and his agreement may be inferred from circumstances, such as its being the place where he usually transacts his mercantile business, receives and pays money, keeps his accounts, &c. The post-office is not such a place. For the convenience of trade, his agreement has been presumed, to receive, at the post-office, all communications which come by mail, from a distance; but the same reason does not exist, as to communications from persons residing in the same place or neighborhood; and therefore his assent to receive such communications at the post-office cannot be inferred; and certainly no such inference can be drawn, if the defendant have another known and regular place of transacting such business elsewhere. The strictness with which notice is required by the mercantile world, is evidence of the importance which they attach to it; and if actual notice be important, it is dangerous to multiply constructive or implied notices. But it is important to the indorser to have notice as soon as possible; he is therefore presumed to assent that such notice, if coming from a distance, shall be given by mail, because that is, in general, the most expeditious and convenient mode of giving it; but with respect to notices from his own immediate neighborhood, where no mail runs, information left at the post-office, is not the most expeditious nor the most certain, nor always the most convenient mode of giving notice. In many post-offices the mail is received only once or twice a week, and it is only on mail days that it is expected that anybody will call for letters. A notice might remain uncalled for, in the office, several days, whereas, it might, perhaps, be given by a messenger in an hour.

Upon general reasoning, therefore, I should conclude that when the parties reside in the same place, (meaning thereby a place where the same post-office is the post-office nearest to the residence of both parties, and between whose respective places of residence there is no communication by mail,) it is not sufficient to leave a notice at the post-office. Such, however, is stated to be the usage of the plaintiffs' bank, and the other banks in this district, and the defendant having been a dealer in the plaintiffs' bank, may be presumed it is supposed, to have had a knowledge of such usage at the time of his indorsement of the note, and to have agreed to be bound thereby. But it is not clear that the usage, given in evidence, applies to a case where the indorser has a place of business known to one at least of the officers of the plaintiffs' bank, and generally known to persons having business with the indorser and in the immediate vicinity of the holder of the note. If it does not apply to such a case, then the usage that he assented to, does not embrace his case. It is only the defendant's consent to the usage that can bind him; and it is not material that one of the plaintiffs' officers did not know the fact which would exclude this case from the scope of the usage relied upon. If banks will rely on usages contrary to the general law of the land, they must do it at the risk of clearly establishing such usages, and bringing their cases clearly within them. It would be with extreme reluctance that the court would decide against a claim of such importance upon so nice a point of law. But established principles must be maintained; and we must not, because the debt is large, sanction a looseness of practice that may unsettle the system of mercantile law. Taking the general rule to be, that, when the parties reside in the same place, (understanding thereby the same post-office district, if I may use the expression, where the regular communication from one of the parties to the other cannot be by mail,) the notice must be personal, or left at the dwelling house, or place of business of the party to be charged by the notice. Ireland v. Kip, 10 Johns. 490, 11 Johns. 231; Freeman v. Boynton, 7 Mass. 483. The right of the plaintiffs to give notice through the post-office at Georgetown, must depend upon the agreement, express or implied, of the defendant to receive notice in that way; and

The court is of opinion, that if the jury should be satisfied by the evidence, that the usage of the Bank of Columbia, and of the other banks above referred to, was, at the time of the defendant's indorsing the said note, and for a long time before, such as is above stated in the statement of the evidence, notwithstanding the party to be charged, should have a place of business such as is stated in the said statement of the evidence, generally known as therein stated, and known to one of the plaintiffs' officers as therein stated, then, from the fact that

the defendant was a dealer in the Bank of Columbia in the manner stated in the said statement of evidence, the jury may infer that he had, at the time of endorsing the said note, a knowledge of such usage; and from such knowledge, may, in the absence of contradictory evidence, infer that he assented to be bound by such usage, and to receive notice in that way; and if the jury should so infer, and should believe the other facts stated in the said statement of evidence to be true as therein stated, then the said notice so left at the Georgetown post-office as aforesaid, is sufficient to charge the defendant in this action as indorser of the note. But if, from the said evidence the jury should be satisfied that the said usage did not extend to indorsers having such place of business in the city of Washington, and known as aforesaid, and should believe the other facts to be as stated in the said statement of evidence, then the said notice so left at the Georgetown post-office as aforesaid, is not sufficient to charge the defendant in this action as indorser of the said note.

And the court further instructed the jury, that if they believe from the evidence, (evidence having been offered to that effect,) that it was at the time of the indorsement aforesaid, the general usage of the said banks and notaries, in the District of Columbia, to give notice to indorsers of the non-payment of a note or bill, on the day after the last day of grace, and that the defendant was a dealer in the said banks as aforesaid, then it is competent for them to infer that the defendant knew of, and consented to such usage; and that if the jury should be satisfied by the said evidence that such notice was given to the defendant of the demand and non-payment of the said note on the day next after the said last day of grace, it was given in sufficient time to charge the defendant in this action. To the refusal of the court (upon the division) to give the instructions prayed respectively by the plaintiffs and the defendant, as well as to the first instruction given, both parties excepted.

The verdict and judgment were for the defendant. Judgment reversed by the supreme court. [Bank of Columbia v. Lawrence,] 1 Pet. [26 U. S.] 578.

[NOTE. This decision was reversed, and a venire facias de novo awarded by the United States supreme court. Bank of Columbia v. Lawrence, 1 Pet. (26 U. S.) 578. Mr. Justice Thompson. in delivering the opinion, said: "The evidence does not show that the defendant had a place of business in the city of Washington, according to the usual commercial understanding of a place of business. There was no public notoriety of any description given to it as such. No open or public business of any kind carried on, but merely occasional employment there, two or three times a week, in a house occupied by another person; and the defendant only engaged in settling up his own business. * * * The general rule is that the party whose duty is to give notice in such cases is bound to use due diligence in communicating such notice. * * * When

2 FED. CAS.—41

the facts are ascertained and undisputed, what shall constitute due diligence is a question of law. * * * When the party to be affected by the notice resides in a different place from the holder, the notice may be sent by the mail to the post-office nearest to the party entitled to such notice. * * * If he were in the habit of receiving his letters through a more distant post-office, and that circumstance was known to the holder or party giving the notice, that might be the proper channel of communication. * * * In cases where the party entitled to notice resides in the country, unless notice sent by mail is sufficient, a special messenger must be employed for the purpose of serving it. And we think that the present case is clearly one which does not impose upon the plaintiffs such duty."]